## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                No. CR-02-1428 LH

ANGELICA M. ORTIZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Application for Order in the Nature of Mandamus and for Stay of Order to Voluntarily Surrender, filed April 14, 2003 (*Doc. 26*). The Court, having considered the motion, memoranda submitted by the parties, and the relevant authority, finds Defendant's Application for Order in the Nature of Mandamus not well taken and it is, therefore, denied.[1]

## I.  Background

On August 16, 2002, Defendant entered a plea of guilty to the charge of Possession with Intent to Deliver less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(b)(1)(D). Defendant's sentencing was continued, pending completion of a presentence report ("PSR"). In the interim, on December 13, 2002, the Bureau of Prisons ("BOP") modified its then-existing procedure for designation of prisoners to community corrections centers ("CCC"s). Specifically, M. Edward Whelan III, a lawyer within the Department of Justice carrying the title of "Principal Deputy Assistant

---

[1]The Court granted the portion of Defendant's motion requesting Stay of Order to Voluntarily Surrender in its Order, filed April 22, 2003 (*Doc. 29*).

Attorney General Attorney," composed a memorandum citing to decisions from the Second, Third, Fifth, and Ninth Circuits and concluding that "community confinement" is not synonymous with "imprisonment" as a matter of law.  Def.'s Mot., Ex. B.  On December 20, 2002, prompted by the DOJ's December 13 memorandum, the Director of the BOP issued a Memorandum for Federal Judges announcing that the BOP would not honor judicial recommendations for placement of inmates in CCCs  for service of the imprisonment portions of their sentences.  Def.'s Mot., Ex. A.  This constituted a "significant procedure change" in the words of the Director, as judicial recommendations had, when appropriate, been honored in the past. *Id.*  Notably, however,  the BOP has always enjoyed full discretion regarding placement of inmates, judicial recommendations notwithstanding.

On February 24, 2003, Defendant was sentenced to a term of five months in the custody of the BOP, with the judicial recommendation that her sentence be served at a CCC.[2]  On March 18, 2003, an Order to Voluntarily Surrender was filed, directing Defendant to report to the Federal Medical Center ("FMC") in Carswell, Texas on April 28, 2003 (*Doc. 25*).[3]

Defendant presumes that the BOP's failure to follow the judicial recommendation in her case is attributable to "the change in BOP procedure involving designation of prisoners to community corrections centers, which took effect on December 13, 2002."  Def.'s Mot. at 3.  Subsequently, Defendant filed the motion presently before the Court, challenging the lawfulness of the new BOP

---

[2]Defendant's offense level is twelve with a criminal history category of I, indicating a guideline sentencing range of ten to sixteen months.  Therefore, Defendant's range is within Zone C of the Sentencing Table, putting her in a category of offender often placed in a CCC under the old BOP procedure, upon such recommendation by the sentencing judge.

[3]Reporting to FMC Carswell necessarily indicates that Defendant has not been designated to serve her sentence at a CCC.

procedure as applied to her and seeking an order in the nature of mandamus under 28 U.S.C. § 1361. Defendant requests that the Court "direct the BOP to exercise its placement discretion in a lawful manner." *Id.* at 1.

## II.   Discussion

Defendant claims that her rights under the Ex Post Facto Clause in Article I, Section 10 of the United States Constitution have been violated, as she entered her guilty plea before the new BOP procedure became effective but was sentenced after the change.  Defendant further challenges as "unlawful" the DOJ determination that the old BOP policy was not in accordance with the law.

The main issue is whether ex post facto prohibitions can be successfully raised by a defendant who pled guilty when the old procedure was in place and whose designated place of incarceration was--or, as here, may have been--subsequently effected by the change in such procedure.  The Ex Post Facto Clause provides that  "no State shall...pass any...ex post facto Law."  U.S. Const. Art. I, § 10.  The Supreme  Court has said, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective--that is, it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it, *by altering the definition of criminal conduct or increasing the punishment for the crime*."  *Lynce v. Mathis*, 519 U.S. 433, 441.  (Emphasis added.)  The Tenth Circuit, among others, has held that the Ex Post Facto Clause "does not prohibit...the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication." *Stevens v. Thomas*, 19 F.3d 498, 500 (10th Cir. 1994); *see also Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46 (5th Cir. 1991);  *Mileham v. Simmons*, 588 F.2d 1279, 1280 (9th Cir 1979) (regulation that simply corrects misinterpretation of statute can be applied retroactively because "the Ex post facto clause [sic] of the Constitution does not give [defendants] a vested right in such

3

an erroneous interpretation"); *Glenn v. Johnson*, 761 F.2d 192 (4th Cir. 1985).

Several district courts have confronted the issues raised by Defendant in this case, though no circuit court has done so to date. Among those rejecting constitutional challenges to the BOP's change of procedure are *United States v. Schild*, 2003 WL 260672 (D. Kan.) and *United States v. Herron*, 2003 WL 272170 (D.Kan.). *See also United States v. Andrews*, 2003 WL 142492 (E.D. Mich.); *Borgetti v. Bureau of Prisons*, 2003 WL 743936 (N.D.Ill.). *But see Cutler v. United States*, 2003 WL 184022 (D.D.C.); *United States v. Serpa*, 2003 WL 1216656 (D.Mass); *Iacaboni v. United States*, 2003 WL 1442420 (D.Mass.).

In *Schild*, Judge Rogers, the Dean of the District Judges in the Tenth Circuit, denied relief to a defendant who was notified of his redesignation from the half-way house where he was serving his term to a prison or jail institution as a result of the new BOP procedure. 2003 WL 260672 at *3. The notification letter states that DOJ has determined that the BOP's CCC placement authority is limited in duration to the last ten percent of the prison sentence, not to exceed six months, pursuant to 18 U.S.C. § 3624(c). The procedure, states the letter, will apply retroactively to any inmate--such as defendant--directly designated to a CCC who, as of December 16, 2002, had more than 150 days remaining to serve. Though the *Schild* court rejected defendant's ex post facto argument as improperly brought in a § 2255 petition, it took the opportunity to state that it would likely reject such argument on its merits as well. *Id.* at *2. The thrust of Judge Rogers' reasoning in that vein is that defendant's sentence would be altered only in *place* of confinement, not in *length*, and that redesignation existed as a possibility for defendant even before the policy change. *Id.*

In *Herron*, Judge Robinson rejected a defendant's claim that her due process rights were violated by her impending redesignation from a CCC to jail or prison. 2003 WL 272170 at *3.

4

Defendant in that case argued that the court had sentenced her while operating under "legally and factually inaccurate material information," because the court believed that its recommendation of a CCC would be followed by the BOP, and the procedure change resulted in a sentence violative of her rights. *Id.* Judge Rogers' opinion identifies two basic flaws in defendant's argument: "1) that it assumes the change in interpretation rendered the judgment inaccurate due to material misinformation, and 2) that it assumes that this Court would have imposed a different sentence had it known that the BOP would not or could not follow its recommendation of community corrections." *Id.* Defendant was denied relief.

Turning to the case at hand, it is the opinion of this Court that the change in BOP procedure does not have constitutional significance for purposes of the Ex Post Facto Clause of the United States Constitution. While acknowledging some authority to the contrary outside of the Tenth Circuit, the Court adopts the reasoning and conclusions in *Schild* and *Herron.* Because the possibility for designation to a jail or prison institution existed for Defendant before the BOP ceased to honor judicial recommendations for placement in CCCs, Defendant's argument that her punishment has been unconstitutionally increased by the change must fail. In fact, it cannot be successfully argued that this Defendant's place of incarceration has actually been effected at all by the change in BOP procedure. Like the defendant in *Herron*, this Defendant relies on the presumption that the Court operated under material misinformation and would have handed down a different sentence had it been aware of the change. There is simply no evidence to support such an assertion. Defendant was designated to a place of incarceration that was always within the realm of possibilities for her--at no

time was she guaranteed that the BOP would heed any judicial recommendation.[4]  If anything changed for Defendant, it was merely the possibility for placement in a CCC, which does not rise to the level of constitutional violation.   Moreover, even assuming, *arguendo,* that her place of incarceration was in fact affected by the change, the difference is only in the *place* she will serve the very same sentence; the Court does not believe such change could have worked a violation of the Ex Post Facto Clause.

Further, the Court finds no other ground upon which to find unlawful the application of the BOP's discretion in placing Defendant in FMC Carswell for service of her sentence.  The DOJ concluded that the BOP's previous policy of placing inmates directly into CCCs was unlawful.  Such determination was based on relevant caselaw establishing that "community confinement" and "imprisonment" are not synonymous  and  on proper statutory interpretation which clarifies the divisions between imprisonment and alternatives thereto under the United States Sentencing Guidelines. *See, e.g., United States v. Serafini*, 233 F.3d 758, 762 (3rd Cir. 2000), *United States v. Jalili*, 925 F.2d 889, 892-893 (6th Cir. 1991), *United States v. Voda*, 994 F.2d 149, 152 (5th Cir. 1993), *United States v. Lemitar*, 991 F.2d 1509, 1513 (9th Cir. 1993).  Application of the new policy to correct the BOP's prior erroneous interpretation of the law does not give rise to a constitutional claim for Defendant.

### III.   Conclusion

In sum, Defendant has failed to establish any ground upon which the Court might grant her requested relief.  Therefore, the Court will not disturb the BOP's designation of FMC Carswell as

---

[4]Though the government refers to Defendant's "redesignation" to FMC Carswell, the Court notes that she has not in fact been redesignated.  Gov't's Reply at 4.  FMC Carswell is the first and only place she has been assigned.

the place for Defendant to serve her term of imprisonment.

WHEREFORE,

**IT IS ORDERED** that Defendant's Application for Order in the Nature of Mandamus, filed

April 14, 2003 (*Doc. 26*) is denied.

DATED May 15, 2003.

_____

SENIOR UNITED STATES DISTRICT JUDGE